UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

JOANN SEELEY,

                                      Plaintiff,

                    v.                                    6:07-CV-381-DNH-DEP

FKI LOGISTEX,

                                      Defendant.

───────────────────────────────────────

APPEARANCES:                                    OF COUNSEL:

ROBERT ABDELLA, ESQ.
Attorney for Plaintiff
8 West Fulton Street
PO Box 673
Gloversville, NY 12078-0006

GOLDBERG SEGALLA, LLP                    LATHA RAGHAVAN, ESQ.
Attorneys for Defendant
Suite 300
8 Southwoods Boulevard
Albany, New York 12211

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I.  INTRODUCTION

        Joann Seeley ("plaintiff" or "Seeley") brings a products liability and negligence suit

against defendant FKI Logistex ("FKI") as the manufacturer of the equipment from which

she received her injuries.  Upon removal by defendant, the suit commenced in federal

court on April 11, 2007.  Defendants move to dismiss plaintiff's complaint pursuant to FED.

R. CIV. P. 56.   Plaintiff opposes.  Oral arguments were heard on January 16, 2009, in

Utica, New York.  Decision was reserved.

II. <u>FACTS</u>

The following facts are set forth in the light most favorable to the plaintiff.  Joann Seeley began working at the Wal-Mart Distribution Center ("Wal-Mart facility" or "facility") in Sharon Springs, New York, in 2000.  At the time of her accident, in 2006, plaintiff worked what is called utility.  One of her responsibilities included placing empty boxes onto a conveyor, which would distribute the boxes to other workers who needed them for order filling.  She received specialized training when she began working utility.  Prior to her accident, Seeley knew of the safety implements and procedures relevant to the conveyor she used as utility.  Of particular note were the emergency cord and pop out rollers.

The conveyor had an emergency cord running along certain areas.  Workers pulled the cord if boxes jammed on the conveyor.  Pulling the cord stopped the movement and allowed a worker to clear the jam.  FKI designs for the conveyor required the emergency cord to be reachable from every pinch point, locations on the conveyor where objects could become trapped.  If something became caught at a pinch point, pulling the emergency cord to stop the conveyor also stopped any extra force on the object caused by movement.

FKI also manufactured its conveyors to have pop out rollers at points where the conveyor changed from a belt portion to a roller portion.  The pop out roller is supposed to occupy the first slot for a roller after the belt portion of the conveyor.  Pop out and fixed rollers differ in appearance.  Pop out rollers do not have a metal guard that would hold them in place.  Pop out rollers manufactured by FKI have yellow clips on them, unlike fixed rollers.  At the Wal-Mart facility, if a pop out roller popped, a worker would place it under the conveyor for a maintenance worker to replace.

On July 26, 2006, Seeley was placing bundles of cardboard boxes onto the conveyor.  A piece of cardboard fell into the transition point between a belt portion and a roller portion of the conveyor.  Plaintiff reached with her left hand to retrieve the cardboard, but her hand became caught between the belt and first roller of the conveyor.  The first roller of the conveyor was a fixed roller.  She tried to pull her hand out but could not.  Realizing this, she found the closest emergency cord, to her right, along the belt portion of the conveyor, and reached out to pull it.  She stretched both her arms and reached for the cord.  After a minute of trying, she finally managed to pull the cord and stop the conveyor.  She still could not free her hand and yelled for help.  Two maintenance workers needed to use a hammer and crowbar to remove the first two rollers and extricate plaintiff's hand.  Seeley suffered severe injuries to her hand.

Since plaintiff's accident, Wal-Mart has modified the emergency cord.  Maintenance workers extended the length of the cord, so the cord terminates closer to the pinch point than it did at the time of Seeley's accident.  Further, a pop out roller is in place as the first roller at the transition point where plaintiff's injury occurred.

## III.  <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law.  FED. R. CIV. P. 56; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).  The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact.  FED. R. CIV. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986).  Facts, inferences therefrom, and

ambiguities must be viewed in a light most favorable to the nonmovant.  <u>Matsushita Elec.</u>

<u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

When the moving party has met the burden, the nonmoving party "must do more

than simply show that there is some metaphysical doubt as to the material facts."

<u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 586, 106 S. Ct. at 1356.  At that point, the

nonmoving party "must set forth specific facts showing that there is a genuine issue for

trial."  FED. R. CIV. P. 56; <u>Liberty Lobby, Inc.</u>, 477 U.S. at 250, 106 S. Ct. at 2511;

<u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 587, 106 S. Ct. at 1356.  To withstand a

summary judgment motion, sufficient evidence must exist upon which a reasonable jury

could return a verdict for the nonmovant.  <u>Liberty Lobby, Inc.</u>, 477 U.S. at 248-49, 106 S.

Ct. at 2510; <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 587, 106 S. Ct. at 1356.

## IV.  <u>DISCUSSION</u>

### A.  <u>Design Defect</u>

To establish defective design, plaintiff must show the product's manufacturer

"breached its duty to market safe products when it marketed a product designed so that it

was not reasonably safe and that the defective design was a substantial factor in causing

plaintiff's injury."  <u>Voss v. Black & Decker Mfg. Co.</u>, 59 N.Y.2d 102, 107 (1983).

Defendants then must demonstrate that the product is safe, meaning the product, as

designed, has greater utility than risk, and that the utility is maximized and risk minimized

as much as possible, while retaining the product's usefulness and acceptable cost.  <u>Id</u>. at

108.  After plaintiff and defendants present evidence, a jury decides whether the product

was not reasonably safe.  <u>Id</u>.

### 1. **Pop Out Roller**

Seeley initially claimed defective design at a transition on the conveyor system where a belt portion ended and a roller portion began.  Specifically, plaintiff claimed placing a fixed roller as the first roller at the conveyor's point of change from belt to rollers was not reasonably safe and that designing a transition point with a pop out roller in the location would be a reasonably safe design.  Defendant adduced evidence that the design of the transition point did include a pop out roller as the first roller.  Plaintiff then conceded FKI's design already required the pop out roller.  (Pl.'s Statement of Material Facts, Dkt. No. 11-22, ¶ 16.)  Consequently, there is no issue of fact.  Rather, all parties agree that defendant's product, as designed, already incorporated what plaintiff suggested as a reasonably safe design.  In such a situation, summary judgment is appropriate.  See Heimbuch v. Grumman Corp., 51 A.D.3d 865, 867 (N.Y. App. Div. 2d Dep't 2008) (dismissing design defect complaint where manufacturer demonstrated its product was designed with the feature plaintiff sought but feature was absent at plaintiff's actual accident involving the product).  Accordingly, plaintiff's design defect claim as to the pop out roller will be dismissed.

### 2. **Emergency Cord**

In a design defect claim, claimants can argue the product to be not reasonably safe by demonstrating a feasible safer design.  Voss, 59 N.Y.2d at 108. Seeley has done so. Defendant's expert Joseph Petrella ("Petrella") performed an inspection of the conveyor. He observed the original eyebolt was not being used.  Petrella understood the original eyebolt to be the termination point of the emergency cord in the FKI design of the conveyor.  He also saw that the conveyor had an additional eyebolt, farther down the

conveyor, in use as a guide and termination point for the emergency cord.  (Petrella Aff. in Supp. of Def.'s Mot. for Summ. J., Doc. No. 9-12, ¶ 12.)   Wal-Mart's maintenance supervisor, Kevin Behr, testified that the emergency stop cord was extended after plaintiff's accident and identified the work order recording the change.  (Behr Dep., Ex. 5A to Pl.'s Aff. in Opp., Doc. No. 11-10 at 20:10-12, 22:4-6.)  With this testimony, plaintiff demonstrates a feasible alternative design for the emergency cord.  The alternative design requires only extending the length of the already-existing emergency cord.  Plaintiff demonstrates feasibility by the fact that Wal-Mart utilizes this design and began doing so August 4, 2006, less than two weeks after her accident.  Because plaintiff can support her design defect claim with a feasible alternative design, there are sufficient questions of fact for submission to a jury.  Defendant's motion for summary judgment as to defective design of the emergency cord will be denied.

**B.  Manufacturing Defect**

When presenting a manufacturing defect claim, the issue of fact to determine is whether the "'product's failure to perform in the intended manner [was] due to some flaw in the fabrication process . . . [,i.e., whether] the product was not built to specifications or . . . the product, as constructed, deviated from any such specifications or design.'"  Repka v. Arctic Cat, Inc., 20 A.D.3d 916, 919 (N.Y. App. Div. 4th Dep't 2005) (alteration in original) (quoting McArdle v. Navistar Int'l Corp., 293 A.D.2d 931, 932 (N.Y. App. Div. 3d Dep't 2002)).  Liability for a manufacturing defect claim arises when the product was defective at the time it left the manufacturer's control.  Rosado v. Proctor & Schwartz, Inc., 66 N.Y.2d 21, 25 (1985).

### 1.  <u>Pop Out Roller</u>

As previously noted, all parties accept that FKI designed its conveyor to have a pop out roller at the transition between the belt portion and roller portion.  Seeley adduced evidence to show that at the time of her accident, there was a fixed roller, rather than a pop out roller, at the transition.  Therefore, the product in use at Wal-Mart and the product FKI designed differed.  Plaintiff alleges a manufacturing defect caused the deviation from the design.

Because the conveyor's design requires a pop out roller at the transition point, a fixed roller in that position when the equipment was delivered to Wal-mart would constitute a deviation from specifications, which, under <u>Repka</u>, would establish a manufacturing defect.  <u>See</u> 20 A.D.3d at 918-19.  Plaintiff contends that FKI was responsible for the placement of a fixed roller at the transition, establishing a manufacturing defect was present.  While defendant suggests Wal-Mart employees altered the roller from a pop out model to a fixed model, plaintiff has evidence, such as sworn testimony from facility employees that no such modification occurred and a notable absence of any such record in the work orders for the conveyor, indicating that such an alteration would not be permitted and did not occur.  The conflicting positions present a genuine issue of material fact as to what type of roller was in place at the transition point when it left FKI's control.

Additionally, Seeley objects to the testimony of defendant's expert Petrella, who testified, in sum, that FKI's manufacturing and audit processes preclude a manufacturing defect.  From this, Petrella opined that any modification to the machine was made by Wal-mart.  Plaintiff also points out that FKI has not submitted evidence from the actual manufacturing of the machine, nor testimony from anyone who had first-hand knowledge

of that specific piece of machinery. Because this was the basis for Petrella's opinion, plaintiff contends that it was speculative and should be disregarded. Moreover, as noted above, plaintiff adduced testimony that Wal-mart would not permit such an alteration, thus creating a question of fact for the jury regardless of Petrella's testimony. Therefore, in the absence of a motion to preclude from plaintiff, it is unnecessary at this time to decide whether Petrella's expert testimony in this regard should be permitted.

### 2. Emergency Cord

Seeley also claims the placement of the emergency cord constituted a manufacturing defect. Specifically, she suggests that while the conveyor's design required the emergency cord to be reachable from a pinch point, the emergency cord at the injury site was unreachable, and consequently defective from the original design. However, even plaintiff's portrayal of the defect does not decidedly support her claim. Plaintiff admits she did reach the emergency cord while her hand was caught, indicating the emergency cord was actually reachable. Plaintiff ultimately claims the length of time it took her to pull the emergency cord, approximately one minute, should have been shorter. She very definitely reached the emergency cord while caught in the conveyor, suggesting no deviation from specifications, which the Repka court held as the critical issue for a manufacturing defect claim. See 20 A.D.3d at 919. Her contention points more to a design defect, which, as previously noted, will survive this summary judgment motion. Because plaintiff fails to adduce facts demonstrating a fault in the manufacturing of the emergency cord, her manufacturing defect claim as to the emergency cord will be dismissed.

**C.  Spoliation**

Sanctions for spoliation can be imposed for either intentional or negligent destruction of evidence.  Hartford Fire Ins. Co. v. Regenerative Bldg. Constr. Inc., 271 A.D.2d 862, 863 (N.Y. App. Div. 3d Dep't 2000).  In either case, a litigant must have been responsible for the destruction.  Id.  A court considers what is necessary for "'elementary fairness'" when deciding to impose or reject sanctions.  Id. (quoting Puccia v. Farley, 261 A.D.2d 83, 85 (N.Y. App. Div. 3d Dep't 1999).  In Hartford Fire Ins., none of the parties knew the location of the unavailable evidence.  Id. at 864.  The record did not demonstrate who destroyed the evidence or when it was destroyed.  Id.  The court stated "[u]nder the circumstances . . . it cannot be presumed that plaintiff is the party responsible for the disappearance of such evidence, or, more importantly, that it was discarded by plaintiff in an effort to frustrate discovery."  Id.  Accordingly, denial of the defendant's motion for sanctions was upheld.  Id.

Seeley presents a nearly identical situation to that in Hartford Fire Ins.  She did not intentionally or negligently destroy the roller that caught her hand.  The Wal-Mart facility possessed the roller at all times.  The record is unclear as to who destroyed the roller and to when it was destroyed.  Nothing suggests plaintiff discarded the roller to impede discovery.  Thus, under Hartford Fire Ins., sanctions against Seeley are inappropriate as both situations present a lack of information on the actual destruction but some indication plaintiff was uninvolved.  Defendant's motion to dismiss all claims based on spoliation must be denied.

### D. Failure to Warn

When a party moves for summary judgment, the opposing party "must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e).  In the instant case, defendant's motion for summary judgment included plaintiff's failure to warn claim.  Under the Federal Rules of Civil Procedure, defendant's motion required plaintiff to respond with facts demonstrating a genuine issue, which she failed to do.  Her response contains nothing pertaining to her failure to warn claim, indicating no issue exists for trial.  Thus, summary judgment must be granted on this claim.

## V. CONCLUSION

The parties agree that FKI's design for the conveyor included a pop out roller at the transition point where plaintiff's injury occurred.  Defendant is entitled to summary judgment dismissing this claim.  However, genuine issues of fact remain as to whether the emergency cord was defectively designed.  Therefore, summary judgment will be denied as to this claim.

Plaintiff has adduced evidence that creates a genuine issue of material fact with regard to whether a manufacturing defect pertaining to the roller was present.  Summary judgment will be denied as to this claim.  No genuine issue exists as to a manufacturing defect related to the emergency cord, and summary judgment will be granted as to this claim.

Defendant has not established entitlement to sanctions for spoliation.  This motion will be denied.  Plaintiff failed to oppose defendant's motion for summary judgment as to her failure to warn claim; therefore, it will be dismissed.

Accordingly, it is

ORDERED that

    1.  Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART;

    2.  Plaintiff's claims for design defect of the roller, manufacturing defect of the emergency cord, and failure to warn are DISMISSED;

    3.  Plaintiff's claims for design defect of the emergency cord and manufacturing defect of the roller are NOT DISMISSED;

    4.  Defendant's motion for sanctions for spoliation is DENIED.

    IT IS SO ORDERED.

_____
United States District Judge

Dated:   September 3, 2009
        Utica, New York.